**ROBERT M. YASPAN, SBN 51867**
LAW OFFICES OF ROBERT M. YASPAN
21700 Oxnard Street, Suite 1750
Woodland Hills, CA 91367
Telephone: (818) 774-9929
Facsimile: (818) 774-9989

General Counsel for Leonard M. Ross

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>Leonard M. Ross<br><br>Debtor. | **Case No. 02:10-bk-49358-VZ**<br><br>Chapter 11<br><br>**MOTION OF LEONARD M. ROSS, FOR ORDER APPROVING COMPROMISE WITH PACIFIC MERCANTILE BANK PURSUANT TO FEDERAL RULE BANKRUPTCY OF PROCEDURE 9019 ; DECLARATION OF LEONARD ROSS**<br><br>Date: November 23, 2010<br>Time: 11:00 a.m.<br>Judge: Hon. Vincent P. Zurzolo<br>Courtroom 1368<br>255 East Temple Street<br>Los Angeles, CA 90012 |

Leonard M. Ross ("Ross"), and the Chapter 11 Debtor entities listed below, hereby move the Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an order approving the settlement (the "Settlement") reflected in the Settlement Agreement and Release (the "Settlement Agreement") attached hereto as Exhibit "1" by and among Ross, Pacific Mercantile Bank ("PMB"), the Chapter 11 Debtor case of Rossco Holdings, Inc. ("Rossco Holdings"), the Chapter 11 Debtor case of Colony Lodging, Inc. ("Colony"), the Chapter 11 Debtor case of Monte Nido Estates, LLC ("Monte Nido Estates"), the Chapter 11 Debtor case of WM

Properties, Ltd. ("WM Properties"), and the following non-debtor entities: Monte Nido Homes, LLC ("Monte Nido Homes"), Lodgeco Properties, Ltd. ("Lodgeco"), and Rossco MP Properties Company LLC ("Rossco MP").

Ross, Rossco Holdings, Colony, Monte Nido Estates, WM Properties, Monte Nido Homes, and Lodgeco, are known herein as the "Ross Parties".

In support of the motion ("Motion") [1], Ross respectfully represent as follows:

## I.

## INTRODUCTION

1. Ross, individually and as the Trustee of the Leonard M. Ross Revocable Trust (the "Trust") is the ultimate owner of, and controls, multiple businesses that, among other things, own, operate, and/or develop real property. PMB is a secured lender to some of them, holding allegedly perfected liens in certain real property. Ross, the Trust, and Rossco Holdings are claimed to be guarantors, or direct obligors, under each of PMB's loans. Ross Decl., Paragraph 2.

2. PMB, Ross, and certain of Ross's businesses have been involved in multiple disputes concerning defaults under the loans. The Settlement seeks to resolve all of those ongoing disputes on a final basis. The disputes have been costly to all of the parties. Since the businesses defaulted on their obligations, PMB has incurred significant losses in the form of missed payments and has incurred significant costs in exercising its remedies. The Ross Parties, in turn, have incurred great expense in defending against PMB's actions and ultimately in seeking bankruptcy protection for four of the businesses (i.e., Rossco Holdings, Colony, WM Properties, and Monte Nido Estates). Ross Decl., Paragraph 3.

3. The Settlement will prevent further loss and will resolve the disputes in a manner that will provide some benefit to each party. It will benefit Ross and the Debtors in a number of ways, including: (a) allowing Ross, Rossco Holdings, Colony and Monte Nido Estates, the opportunity to seek 1031 exchanges to minimize tax liability; (b) allowing WM Properties time to seek refinancing; (c) minimizing and fixing PMB's claims against Rossco Holdings and PMB's

[1] Identical motions will be filed in each of the Colony, Monte Nido Estates, Rossco Holdings, and WM Properties bankruptcy cases. The other members of the Ross Parties are not involved with any bankruptcy proceedings.

deficiency claim against Ross and the Trust as guarantors; (d) eliminating any deficiency claims against Rossco Holdings, Colony, WM Properties or Monte Nido Estates; and (e) allowing the Ross Parties to conserve time and expense and focus on other matters. It will also benefit PMB by allowing PMB to recover its collateral without further delay and costs.

4. The Settlement should be approved. It is the product of arm's length negotiations and is in the best interests of the Debtors' estates.

## II.

## BACKGROUND

### A. The Bankruptcy Proceedings

5. On September 15, 2010 (the "Petition Date"), Ross filed a voluntary petition (the "Petition") seeking protection from his creditors under chapter 11 of the Bankruptcy Code. Ross Decl., Paragraph 4.

6. Ross's individual petition followed the petitions of certain business entities that are owned and/or controlled by Ross and the Trust, including four that are parties to the Settlement, who are Colony, Monte Nido Estates, WM Properties, and Rossco Holdings (collectively the "Debtor Affiliates"). Between July 27 and August 2, 2010 each of the Debtor Affiliates filed chapter 11 bankruptcy proceedings before the United States District Court for the Western District of Texas (Waco Division) (the "Texas Court"). By order entered on October 12, 2010, the Texas Court transferred the venue for these cases to the Central District of California, Los Angeles Division. Ross Decl., Paragraph 5.

### B. The Outstanding Obligations Being Settled

7. The outstanding principal amount claimed by PMB the various outstanding obligations to PMB as of the Debtor Affiliates' bankruptcy petition dates is approximately $15.3 million. Ross Decl., Paragraph 6.

8. The collateral securing the obligations is as follows:

a. All of the real property and rents of Colony, including the Colony Apartments in College Station, TX (the "Colony Apartments"). The Colony Apartments are encumbered by a

second lien deed of trust and assignment of rents in favor of PMB. PMB claims that the amount due to it under the note secured by the second deed of trust is approximately $6.6 million, including principal, interest, late charges, and fees and costs as of October 25, 2010. It should also be noted that there exists a first lien deed of trust which secures an obligation in favor of Propel Financial Services, LLC in the approximate amount of $130,000 for the payment of property taxes that came due in 2009. There is further another $125,000, plus or minus, that will come due for 2010. The total secured indebtedness and potential tax claims against the Colony Apartments is therefore around $6.7 million (with a claimed per diem of $2,139.77). The Debtor does not believe that the present value of the property exceeds $6.7 million (net of commissions, costs, title fees and escrow fees). Ross Decl. Paragraph 7.

b. Certain real property, consisting of 20 vacant lots, owned by Ross, Monte Nido Homes and Monte Nido Estates, located on the north and south side of Piuma Road, East of Cold Canyon Road, Calabasas CA 91302 (the "(Piuma) Calabasas, CA Lots"). The (Piuma) Calabasas, CA Lots are encumbered by first and second lien deeds of trust (signed by Rossco Holdings as borrower) in favor of PMB, Monte Nido Estates' only significant creditor. Ross Decl., Paragraph 10. The claimed liens are approximately $9 million; the value of the 20 lots is around $5 million, according to the appraisal attached as Exhibit "3". Since the individual estate executed a guarantee, there is an approximate $4 million contingent guarantee claim that could be placed against the individual estate. Ross Decl., Paragraph 7.

c. Certain real property owned by Rossco MP, commonly known as 633 Para Grande Lane, Santa Barbara, CA 93108 (the "Santa Barbara Property"). The Santa Barbara Property is encumbered by a second lien deed of trust in favor of PMB. It is disputed as to whether or not the lien on the Santa Barbara Property should already have been reconveyed pursuant to PMB's foreclosure of certain property in Texas occupied by a Travelodge. Ross Decl., Paragraph 7.

d. Certain real property owned by WM Properties, commonly known as 702 S. Fort Hood Street, Killen, Texas 76541, Bell County, Texas (the "Verizon Property"). The Verizon property is encumbered by a first deed of trust and an assignment of rents in favor of PMB in the amount of approximately $250,000, and a second deed of trust in the amount of approximately $300,000 in favor of RFF Family Partnership, L.P. The value of the real property is somewhat in excess of the two debts, but not to any great extent. Ross Decl., Paragraph 7.

9. Ross does not presently believe that the collateral fully secures PMB's claims and that PMB will likely have a significant deficiency claim in excess of $750,000 (and perhaps as much as $4 million or more). Ross Decl., Paragraph 8.

## III.

## RELIEF REQUESTED

10. By this Motion, Ross requests that the Court enter an order approving the Settlement memorialized in the Settlement Agreement.

11. In addition, the Debtor requests that the Order contain the following additional language in order to comply with the tax-free exchange provisions of the Agreement: "The Court finds that, upon the conveyance to PMB of the Colony Apartments, and the (Piuma) Calabasas CA lots, all indebtedness and obligations deriving from or relating to those properties which may otherwise be owing to PMB shall be deemed satisfied and discharged in full." The reason for the additional provision relates to the fact that it is important that the income from the discharge of indebtedness exception under the Internal Revenue Code relating to the PMB (Piuma) Calabasas, CA Lots loans (which have a balance in excess of the fair market value of that property, i.e., the 20 Lots) is available to Debtors. This finding, which is consistent with the release language of the Settlement Agreement, is a necessary prerequisite. Nothing contained herein shall be deemed to affect the continuing obligations set forth in the Settlement Agreement. Ross Decl., Paragraph 9.

12. A copy of the proposed order approving the Settlement (the "Order") is attached as Exhibit 2 hereto.

## IV.

## TERMS OF PROPOSED COMPROMISE AND SETTLEMENT

13. Attached as Exhibit 1 is a copy of the Settlement Agreement executed by the Ross Parties and PMB. The material terms may be summarized as follows:[2]

a. Transfer of Real Property. Within three (3) business days following the approval of the Settlement Agreement: (i) Ross, Monte Nido Estates, and Monte Nido Homes will provide or cause to be provided a deed or deeds in lieu of foreclosure to convey all of the (Piuma) Calabasas, CA Lots; and (ii) Colony will provide or cause to be provided a deed or deed in lieu of foreclosure to convey the Colony Apartment.

b. Payment of PMB's Lien on Verizon Property. No later than February 11, 2011, WM Properties will pay off the PMB loan secured by the Verizon Property. The payoff amount will include payment in cash of all principal, all interest at the non-default rate, costs, and all late fees. If WM Properties fails to make such a payment to PMB (or fails to make a monthly payment when due), PMB will automatically be deemed to have granted relief from stay without further Court order, Debtors will not contest PMB's efforts to realize upon the Verizon Property as collateral, and Debtors will provide PMB with access to all books and reporting relating to the Verizon Property.

c. Release of Liens on Santa Barbara Property. Upon delivery of the deeds or deeds in lieu of foreclosure on the Colony Apartments and (Piuma) Calabasas, CA Lots, PMB will release its liens on the Santa Barbara Property.

d. Deficiency Claim. Upon the occurrence of the delivery of the deeds or deeds in lieu of foreclosure on the Colony Apartments and (Piuma) Calabasas, CA Lots, PMB will be deemed to waive any and all amounts that remain unpaid other than a single deficiency claim that will be deemed to be an allowed general unsecured claim in the amount of $750,000 ("PMB's Deficiency Claim"). PMB's Deficiency Claim will be a joint and several liability of the Rossco Holdings and Ross bankruptcy estates. PMB will not be required to file a proof of claim to establish the liability.

e. Releases. The Ross Parties agree to release and forever discharge PMB and its employees of and from claims and actions, whether known or unknown, arising to or relating to the global settlement of the Obligations. PMB agrees to release and forever discharge the Ross Parties and their employees of and from claims and actions, whether known or unknown, arising to or relating to the global settlement of the Obligations.

f. Chapter 11 Plan. Rossco Holdings and Ross will obtain confirmation of their chapter 11 plans within a reasonable period of time.

g. Books and Records/ Access. Beginning on October 21, 2010, the Ross Parties will provide PMB with full access to, and make available for copying certain books and records in connection with the Colony Apartments and the (Piuma)

[2] While this summary of the principal terms of the Settlement Agreement is intended to be accurate, in the event of any discrepancies between the terms of the Settlement Agreement and this summary, the terms of the Settlement Agreement control.

Calabasas, CA Lots.

h. Stand Down. Provided that the Court rules on the Motion before November 16, 2010, PMB will not pursue any Bankruptcy Rule 2004 examination or motion to appoint a trustee in either the Ross or Debtor Affiliate cases. In the event the Court does not approve the Motion, PMB may continue to pursue its Rule 2004 examinations and motions to appoint a trustee in the Ross and Debtor Affiliate cases. Ross may not seek to extend the existing deadlines on the Rule 2004 examinations, which are currently required to take place on or before December 15, 2010.

**V.**

**RULE 9019 BASIS FOR RELIEF**

14. Rule 9019 of the Federal Rules of Bankruptcy Procedure provides that the Court may approve a compromise or settlement: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. In re Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) ("in administering reorganization proceedings in an economical and practical manner, it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts").

15. For a compromise to be approved, the proposed compromise must be fair and equitable. TMT Trailer, 390 U.S. at 424. In determining the fairness and equity of a compromise, courts have considered the following factors: (a) the probability of ultimate success should the claims be litigated; (b) the difficulty, if any, to be encountered in collection; (c) the complexity, expense and likely duration of such litigation; and (d) the paramount interests of creditors and a proper deference to their reasonable views. In re A&C Properties, 784 F.2d 1377, 1382 (9th Cir. 1986), cert. denied, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986).

16. In ruling on a proposed compromise, however, the Court should not substitute its own judgment for that of the trustee or debtor in possession. See In re Carla Leather, Inc., 44 B.R. 457, 466 (Bankr. S.D.N.Y. 1984), aff'd, 50 B.R. 765 (S.D. N.Y. 1985). Nor is the Court required to determine whether the settlement was the best that the trustee could have obtained. See In re W.T. Grant, 699 F.2d 599, 608, 613 (2d Cir. 1982), cert. denied, 464 U.S. 822, 104 S. Ct. 89, 79 L.Ed.2d 97 (1983). Rather, the Court should "canvass the issues and see whether the settlement

'fall[s] below the lowest point in the range of reasonableness.'" Id. at 608; In re Bell & Beckwith, 87 B.R. 472, 474 (N.D. Ohio 1987).

**B. The Settlement Meets the Standards for Approval Under Bankruptcy Rule 9019**

17. The Settlement should be approved under the applicable statutory and decisional standards. It is the product of extensive, arms-length negotiations among the parties. It provides for the release of PMB's liens and, more importantly, the pre-arranged capping of PMB's single Deficiency Claim against Ross and Rossco Holdings. In addition, the Settlement allows Ross, Colony, Rossco Holdings, and Monte Nido Estates the opportunity to seek to complete 1031 exchanges that may significantly reduce potential tax claims against their estates, improving the combined debtors''s prospects for reorganizing and paying the allowed unsecured claims of creditors in full. Ross Decl., Paragraph 10.

18. Further, the Settlement eliminates the potential for any PMB claims against Colony, Rossco Holdings, Monte Nido, or WM Properties (except as disclosed in the Settlement Agreement), leaving any potential other assets, including litigation claims, if any, for the benefit of their unsecured creditors. Finally, the Settlement also seeks to consensually resolve all other the ongoing disputes among the parties, including but not limited to PMB's pending motions to appoint a trustee that were filed in the Texas Bankruptcy cases, as PMB will no longer be involved in the bankruptcy cases to any significant degree. This consensual resolution will thus allow the Debtors to cap their losses, eliminate further expense, and focus their resources on maximizing the value of the equity that remains in their other assets. Ross Decl., Paragraph 11. As applied here, the TMT Trailer factors support this Court's approval of the Settlement as in the best interest of the Debtors and their creditors. Ross submits that the Settlement should be approved for each of the following reasons:

19. *Probability of Success*. The Ross Parties believe that in the absence of the Settlement Agreement, PMB ultimately may prevail on, among other things, obtaining relief from the automatic stay to allow it to foreclose on the (Piuma) Calabasas, CA Lots and Colony Apartments.

20. In particular, Colony is a single asset real estate debtor who may not be able to generate cash sufficient to pay the contractual interest due under the note. Ross Decl., Paragraph 19. To the extent Colony cannot file a confirmable chapter 11 plan, Colony's failure to pay contractual interest would lead to relief from stay under 11 U.S.C. § 362(d)(3). Finally, Colony would have funds remaining in its bank account, and certain accounts receivable, remaining after the transfer to pay its administrative, and ongoing, bills as they become due. This is because PMB is only receiving the real property and not the cash and cash equivalents. Ross Decl., Paragraph 12.

21. Monte Nido, which holds raw land and does not generate any cash, is a singularly unattractive asset for the likes of a Debtor in today's economic environment. Trading the asset for a release, from Monte Nido's point of view, and a cap on contingent liability from Rossco Holdings' and the individual estate's point of view, is an exercise in good business judgment. Ross Decl., Paragraph 13.

22. If the settlement were not approved then the continued pendency of the existing PMB Motions for relief from stay, and a trustee, would not benefit the Debtors. The elimination of future litigation is a benefit that cannot be overstated here. Ross Decl., Paragraph 14.

23. Under the circumstances, the proposed Settlement is fair and reasonable, as it approximates the parties' reasonable estimation of risks associated with their respective claims and defenses.

24. *Complexity of Litigation; Related Expense.* PMB holds many claims. Some are complex and some are not, but most should involve disputes over values of real property that may be complex and will be expensive. Further, to the extent the Debtors seek to retain the real property collateral, the valuation fights will be very expensive because the Debtors will need to provide evidence of value in connection with any of their chapter 11 plans. The Settlement eliminates this expense. It will conserve the Debtors' resources, financial and otherwise, and avoid the attendant cost, delay and uncertainty associated with litigation.

25. *Interest of Creditors.* In addition to the benefits discussed above, the Settlement transmutes the currently unknown deficiency claims of PMB against the Debtors to the allowed (and final) PMB's Deficiency Claim against Ross and Rossco Holdings in an amount that

should likely be less than any actual deficiency claim that would have resulted (under the loan documents PMB is entitled to among other things, late charges and attorneys fees and Ross does not believe that the collateral fully secures PMB's claims). Ross Decl., Paragraph 15.

26. Thus, additional funds should be freed up for the benefit of all other creditors. In addition, the Settlement will lead to PMB's release of its lien on the Santa Barbara Property, freeing up additional value. Finally, creditors will benefit from the reduced administrative costs as certain Debtors will have a reduced pool of general unsecured claims while others will have an exact claim amount from PMB to plan for their claims administration.

27. Having analyzed and weighed the above factors, the Ross Parties believe the negotiated Settlement Agreement – achieved after good-faith, arm's length negotiations – is fair and reasonable, and in the best interest of the estates.

## VI.

## NOTICE

28. The Ross Parties will timely and properly serve copies of this Motion (with all exhibits) on: (a) the office of the United States Trustee; (b) the Debtor's top 20 creditors; and (c) each person or entity who has filed a request for special notice. Ross submits that such notice of this Motion is sufficient and proper and that no further notice is necessary.

WHEREFORE, for the foregoing reasons the Ross Parties respectfully request that the Court (a) enter an order, in substantially the form of order attached hereto as Exhibit 2, granting this Motion and (b) granting such other relief as the Court deems just and appropriate under the circumstances.

Dated: October 27, 2010

LAW OFFICES OF ROBERT M. YASPAN

Robert M. Yaspan, Esq.

APPROVED:

Leonard M. Ross, Debtor

**DECLARATION OF LEONARD M. ROSS**

I, Leonard M. Ross, being first duly sworn, declare and allege as follows:

1. I am the herein Debtor. I have personal knowledge of the facts set forth herein and if called as a witness I could, and would, so competently testify hereto.

2. Ross, individually and as the Trustee of the Leonard M. Ross Revocable Trust (the "Trust") is the ultimate owner of, and controls, multiple businesses that, among other things, own, operate, and/or develop real property. PMB is a secured lender to some of them, holding allegedly perfected liens in certain real property. Ross, the Trust, and Rossco Holdings are claimed to be guarantors, or direct obligors, under each of PMB's loans.

3. PMB, Ross, and certain of Ross's businesses have been involved in multiple disputes concerning defaults under the loans. The Settlement seeks to resolve all of those ongoing disputes on a final basis. The disputes have been costly to all of the parties. Since the businesses defaulted on their obligations, PMB has incurred significant losses in the form of missed payments and has incurred significant costs in exercising its remedies. The Ross Parties, in turn, have incurred great expense in defending against PMB's actions and ultimately in seeking bankruptcy protection for four of the businesses (i.e., Rossco Holdings, Colony, WM Properties, and Monte Nido Estates).

4. On September 15, 2010 (the "Petition Date"), Ross filed a voluntary petition (the "Petition") seeking protection from his creditors under chapter 11 of the Bankruptcy Code.

5. Ross's individual petition followed the petitions of certain business entities that are owned and/or controlled by Ross and the Trust, including four that are parties to the Settlement, who are Colony, Monte Nido Estates, WM Properties, and Rossco Holdings (collectively the "Debtor Affiliates"). Between July 27 and August 2, 2010 each of the Debtor Affiliates filed chapter 11 bankruptcy proceedings before the United States District Court for the Western District of Texas

(Waco Division) (the "Texas Court"). By order entered on October 12, 2010, the Texas Court transferred the venue for these cases to the Central District of California, Los Angeles Division.

6. The outstanding principal amount claimed by PMB the various outstanding obligations to PMB as of the Debtor Affiliates' bankruptcy petition dates is approximately $15.3 million.

7. The collateral securing the obligations is as follows:

a. All of the real property and rents of Colony, including the Colony Apartments in College Station, TX (the "Colony Apartments"). The Colony Apartments are encumbered by a second lien deed of trust and assignment of rents in favor of PMB. PMB claims that the amount due to it under the note secured by the second deed of trust is approximately $6.6 million, including principal, interest, late charges, and fees and costs as of October 25, 2010. It should also be noted that there exists a first lien deed of trust which secures an obligation in favor of Propel Financial Services, LLC in the approximate amount of $130,000 for the payment of property taxes that came due in 2009. There is further another $125,000, plus or minus, that will come due for 2010. The total secured indebtedness and potential tax claims against the Colony Apartments is therefore around $6.7 million (with a claimed per diem of $2,139.77). The Debtor does not believe that the present value of the property exceeds $6.7 million (net of commissions, costs, title fees and escrow fees).

b. Certain real property, consisting of 20 vacant lots, owned by Ross, Monte Nido Homes and Monte Nido Estates, located on the north and south side of Piuma Road, East of Cold Canyon Road, Calabasas CA 91302 (the "(Piuma) Calabasas, CA Lots"). The (Piuma) Calabasas, CA Lots are encumbered by first and second lien deeds of trust in favor of PMB, Monte Nido Estates' only significant creditor. Ross Decl., Paragraph 10. The claimed liens are approximately $9 million; the value of the 20 lots is around $5 million, according to the appraisal attached as

Exhibit "3". Since the individual estate executed a guarantee, there is an approximate $4 million contingent guarantee claim that could be placed against the individual estate.

c. Certain real property owned by Rossco MP, commonly known as 633 Para Grande Lane, Santa Barbara, CA 93108 (the "Santa Barbara Property"). The Santa Barbara Property is encumbered by a second lien deed of trust in favor of PMB. It is disputed as to whether or not the lien on the Santa Barbara Property should already have been reconveyed pursuant to PMB's foreclosure of certain property in Texas occupied by a Travelodge.

d. Certain real property owned by WM Properties, commonly known as 702 S. Fort Hood Street, Killen, Texas 76541, Bell County, Texas (the "Verizon Property"). The Verizon property is encumbered by a first deed of trust and an assignment of rents in favor of PMB in the amount of approximately $250,000, and a second deed of trust in the amount of approximately $300,000 in favor of RFF Family Partnership, L.P.. The value of the real property is somewhat in excess of the two debts, but not to any great extent.

8. Ross does not presently believe that the collateral fully secures PMB's claims and that PMB will likely have a significant deficiency claim in excess of $750,000 (and perhaps as much as $4 million or more).

9. In addition, the Debtor requests that the Order contain the following additional language in order to comply with the tax-free exchange provisions of the Agreement: "The Court finds that, upon the conveyance to PMB of the Colony Apartments, and the (Piuma) Calabasas CA lots, all indebtedness and obligations deriving from or relating to those properties which may otherwise be owing to PMB shall be deemed satisfied and discharged in full." The reason for the additional provision relates to the fact that it is important that the income from the discharge of indebtedness exception under the Internal Revenue Code relating to the PMB (Piuma) Calabasas,

CA Lots loans (which have a balance in excess of the fair market value of that property, i.e., the 20 Lots) is available to Debtors. This finding, which is consistent with the release language of the Settlement Agreement, is a necessary prerequisite. Nothing contained herein shall be deemed to affect the continuing obligations set forth in the Settlement Agreement.

10. The Settlement should be approved under the applicable statutory and decisional standards. It is the product of extensive, arms-length negotiations among the parties. It provides for the release of PMB's liens and, more importantly, the pre-arranged capping of PMB's single Deficiency Claim against Ross and Rossco Holdings. In addition, the Settlement allows Ross, Colony, Rossco Holdings, and Monte Nido Estates the opportunity to seek to complete 1031 exchanges that may significantly reduce potential tax claims against their estates, improving the combined debtors''s prospects for reorganizing and paying the allowed unsecured claims of creditors in full..

11. Further, the Settlement eliminates the potential for any PMB claims against Colony, Rossco Holdings, Monte Nido, or WM Properties (except as disclosed in the Settlement Agreement), leaving any potential other assets, including litigation claims, if any, for the benefit of their unsecured creditors. Finally, the Settlement also seeks to consensually resolve all other the ongoing disputes among the parties, including but not limited to PMB's pending motions to appoint a trustee that were filed in the Texas Bankruptcy cases, as PMB will no longer be involved in the bankruptcy cases to any significant degree. This consensual resolution will thus allow the Debtors to cap their losses, eliminate further expense, and focus their resources on maximizing the value of the equity that remains in their other assets.

12. In particular, Colony is a single asset real estate debtor who may not be able to generate cash sufficient to pay the contractual interest due under the note. To the extent Colony cannot file a confirmable chapter 11 plan, Colony's failure to pay contractual interest would lead to relief from stay under 11 U.S.C. § 362(d)(3). Finally, Colony would have funds remaining in its bank account, and certain accounts receivable, remaining after the transfer to pay its administrative,

and ongoing, bills as they become due. This is because PMB is only receiving the real property and not the cash and cash equivalents.

13. Monte Nido, which holds raw land and does not generate any cash, is a singularly unattractive asset for the likes of a Debtor in today's economic environment. Trading the asset for a release, from Monte Nido's point of view, and a cap on contingent liability from Rossco Holdings' and the individual estate's point of view, is an exercise in good business judgment.

14. If the settlement were not approved then the continued pendency of the existing PMB Motions for relief from stay, and a trustee, would not benefit the Debtors. The elimination of future litigation is a benefit that cannot be overstated here.

15. In addition to the benefits discussed above, the Settlement transmutes the currently unknown deficiency claims of PMB against the Debtors to the allowed (and final) PMB's Deficiency Claim against Ross and Rossco Holdings in an amount that should likely be less than any actual deficiency claim that would have resulted (under the loan documents PMB is entitled to among other things, late charges and attorneys fees and Ross does not believe that the collateral fully secures PMB's claims).

At Beverly Hills, California this 29th day of October, 2010.

Leonard Ross

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 21700 Oxnard Street, Suite 1750, Woodland Hills CA 91367

A true and correct copy of the foregoing document described **MOTION OF LEONARD M. ROSS FOR ORDER APPROVING COMPROMISE WITH PACIFIC MERCANTILE BANK PURSUANT TO FEDERAL RULE BANKRUPTCY OF PROCEDURE 9019** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ***October 22, 2010*** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Michael S Greger on behalf of Interested Party Courtesy NEF
mgreger@allenmatkins.com

Michael S Kogan on behalf of Creditor Michael Kogan
mkogan@ecjlaw.com

Dare Law on behalf of U.S. Trustee United States Trustee (LA)
dare.law@usdoj.gov

Justin E Rawlins on behalf of Creditor Pacific Mercantile Bank
jrawlins@winston.com, docketla@winston.com

David B Shemano on behalf of Creditor National Guardian Life Insurance Co.
dshemano@pwkllp.com

Ramesh Singh on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Joshua D Wayser on behalf of Interested Party Courtesy NEF
joshua.wayser@kattenlaw.com, kim.johnson@kattenlaw.com

II. **SERVED VIA FIRST CLASS MAIL** (indicate method for each person or entity served):
On ***October 29, 2010,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

SEE ATTACHED SERVICE LIST

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on , I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 29, 2010 | Tatyana K. Menachian | [signature] |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

Leonard M. Ross
1011 No. Beverly Drive
Beverly Hills, CA 90210

Bank of America
201 East Washington Street
Phoenix, AZ 85004

Capital One Auto Finance
3905 N. Dallas Pkwy
Plano TX 75093

Chase Auto Finance
1820 E. Sky Harbor Circle S
Phoenix, AZ 85034

Merri Jean Ross
1023 N. Roxbury Drive
Beverly Hills, CA 90210

Nataalia Rey
9196 Thrasher Avenue
Los Angeles, CA 90069

Pacific Mercantile Bank •
9720 Wilshire Boulevard
Beverly Hills, CA 90212

Rossco Holdings Incorporated
1011½ N. Beverly Drive•
Beverly Hills, California 90210

Wells Fargo Financial Leasing
2012 Corporate Lane, Suite 108
Napperville, IL 60197-6434

Amer. Express
2965 W. Corporate Lakes Blvd
Weston FL 33331

Citizen's Bank
328 S. Saginaw St
Flint MI 48502

Bellagio Hotel
3600 Las Vegas Blvd South
Las Vegas, NV 89109

JP Morgan Private Bank
270 Park Ave
New York, NY 10017

OneWest Bank FSB
390 West Valley Parkway
Escondido, CA 92025

Prosperity Bank
2202 Longmire Drive
College Station, Texas 77845

OneWest Bank FSB
390 West Valley Parkway
Escondido, CA 92025

Rossco MP Properties Co. LLC
1011½ N. Beverly Drive
Beverly Hills, CA 90210

RFF Family Partnership, LP
226 Twenty-Third Street
Santa Monica, California 90402

National Guardian Life Insurance Co.
Two East Gilman Street
Madison, WI 53703

Chase Home Finance
3415 Vision Drive
Columbus OH 43219

Chamber Copy
The Hon. Vincent Zurzolo
255 E. Temple Street, Suite 1360
Courtroom 1368
Los Angeles, CA 90012

Office of the United States Trustees
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

Stuart R. Richter
Katten Muchin Roseman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067

WINSTON & STRAWN LLP
David L. Aronoff
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543

*Request for Special Notice*
Ascension Capital Group
2201 E. Lamar Blvd.
Arlington, TX 76006