ROBERT M. YASPAN, SBN #051867
LAW OFFICES OF ROBERT M. YASPAN
21700 Oxnard Street, Suite 1750
Woodland Hills, California 921367
Telephone: (818) 774-9929
Facsimile: (818) 774-9989
[Proposed] General Counsel for
Debtors-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re | ) Chapter No.: 11 |
| | ) |
| Leonard Ross | ) Case No.: 1:10-bk-49358-VZ |
| | ) |
| | ) APPLICATION OF DEBTOR |
| Debtor | ) FOR ORDER AUTHORIZING EMPLOYMENT |
| | ) OF HILTON & HYLAND AS REAL ESTATE |
| | ) BROKER; DECLARATIONS OF LEONARD |
| | ) ROSS AND JEFF HYLAND; DECLARATION OF |
| | ) TATYANA K. MENACHIAN |
| | ) |
| | ) [No Hearing Required] |
| | ) |
| | ) |

By this application, Leonard Ross, individually and as trustee of the Leonard M. Ross

Revocable Trust U/D/T 12/20/1985, the debtor and debtor-in-possession, ("Debtor") respectfully

requests an order of the above-entitled court authorizing the employment of Hilton & Hyland as the

listing broker ("BROKER") in connection with the sale of the debtor's interest in the real property

located and commonly described as 1011 North Beverly Drive, Beverly Hills, California 90210

("PROPERTY").

This Application is brought pursuant to Sections 327 and 328 of the United States Bankruptcy

Code ("Code"), the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), rules 2014 and

2016, and the Local Bankruptcy Rules ("Local Rules"), rule 2014-1(b)(1), and is based upon the

statements contained herein and on the Declarations of Leonard Ross and Jeffrey Hyland.

BACKGROUND

This Chapter 11 case was commenced by the filing of a Voluntary Petition under Chapter 11

of the Code by the Debtor on September 15, 2010 ("Petition Date"). The Debtor continues to operate

his business and manage his affairs as a debtor-in-possession pursuant to sections 1107 and 1108 of

the Code. Declaration of Leonard Ross ("ROSS DEC.") paragraph 2.

A major issue involving the estate revolves around the PROPERTY, a major asset of the

Debtor, which consists of a single family residential property, of approximately 50,000 +/- square

feet. The PROPERTY was formerly known as the "Beverly House", and has served as the venue for

several major motion pictures. The primary secured claimant is the Bank of America ("BOFA") with

respect to an approximately $22,400,000 indebtedness. The Debtor was behind on his payments to

the BOFA as of the Petition Date and the BOFA had instituted foreclosure proceedings. The Debtor,

immediately preceding the Petition Date, engaged a professional appraisal for the home; the appraisal

has been filed with the Office of the United States Trustee. ROSS DEC., paragraph 3.

THE LISTING AGREEMENT

On September 16, 2010, Debtor entered into a Residential Listing Agreement (Exclusive

Authorization and Right to Sell) with BROKER for sale of the PROPERTY. A true and accurate

copy of the Listing Agreement, entered into on or about September 16, 2010, is attached as Exhibit

"A" and incorporated herein by reference. The Listing Agreement is a standard form agreement

created by the California Association of Realtors, Inc. and is commonly used in the residential

market, except for an addendum attached to the Listing Agreement that is incorporated into it. ROSS

DEC., paragraph 4; Declaration of Jeff Hyland ("HYLAND DEC."), paragraph 4.

Among the more salient terms of the Listing Agreement are that:

(a)     the initial listing price for the PROPERTY is $95,000,000;

(b)     the Debtor agreed to compensate the BROKER on a contingency fee, subject to the sale of the Property.  The proposed commission payable in connection with the sale of the property would be as follows:

1.     When the buyer's broker is not the BROKER, then 1% of the Gross Selling Price to BROKER, and 1-3/4% of the Gross Selling Price to the buyer's broker, if and when the sale is confirmed by the Court, and the sale successfully consummates.

2.     When the buyer's broker is also the BROKER, 2 ½ % of the Gross Selling Price to the BROKER.

3.     When the prospective buyer is referred or directed to the BROKER by the Debtor (Seller), then the BROKER shall receive 1% of the Gross Selling Price.

4.     Notwithstanding anything to the contrary herein, the Debtor and the Debtor's Revocable Trust, has the right to market for sale or lease the PROPERTY.  Where the buyer, or any non-broker representative of any such buyer, is first shown or introduced to, the PROPERTY by the Debtor or the Debtor's Revocable Trust, the commission payable to BROKER shall be 0.75% of the Gross Selling Price if an agreement for sale to such buyer is entered into within 60 days of October 15, 2010, and 1% of the Gross Selling Price if a sales contract with any such buyer is entered into after 60 days of October 15, 2010, but during the term of the listing for sale.

5.     No commission shall be payable in the event a sale of the PROPERTY is not consummated by a buyer.  In the event that the deposit into escrow is forfeited into the estate for any reason (such as the failure of a buyer to consummate a sale after the Court approves the sale) no commission shall be payable, or paid, and the funds shall be turned over to the Estate subject only to

1  a payment of an escrow fee of not greater than $750.

2      6.      In the event of a lease of the PROPERTY to anyone first introduced or first shown the

3  PROPERTY by BROKER, the commission payable to BROKER shall be $5,000 for each month of

4  any such lease.

5      7.      The BROKER is authorized and directed to cooperate with and participate in the MLS

6

7  (Multiple Listing Service) for the PROPERTY.

8      8.      The term of the listing was for one year from entering into the Listing Agreement on

9  September 16, 2010 and terminating on September 15, 2011.

10     9.      The foregoing is intended as a summary only of the material terms of the Listing

11 Agreements.  However, where this summary, or this Application, differs from the attachments hereto,

12

13 this summary shall control.

14 ROSS DEC., paragraph 5; HYLAND DEC., paragraph 5.

15     The Debtor believes it would be in the best interests of this estate and its creditors to employ

16

17 BROKER as of September 16, 2010 and utilize the services of BROKER to market and sell the

18 PROPERTY.   Other than as set forth in the Listing Agreement, there are no postfililng commitments

19 or agreement as to the payment of compensation relating to the sale of the PROPERTY.  ROSS

20 DEC., paragraph 6.

21     BROKER has shown the PROPERTY to several prospective buyers who have expressed

22

23 interest.  BROKER has expended funds for advertising and marketing, and is qualified as any to

24 represent the Debtor in the sale of the PROPERTY.  HYLAND DEC., paragraph 6.

25              <u>THE BROKER IS A DISINTERESTED PERSON</u>

26     To the best of Debtor's knowledge, BROKER does not hold or represent any interest adverse

27 to the Debtor or his estate.  ROSS DEC., paragraph 7.  BROKER is not a creditor of the Debtor and

28

is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code.

Further, other than having a prior listing for the PROPERTY approximately 20 years ago, and other

than listing properties owned by insiders of the Debtor,  BROKER has no prior connection with the

Debtor, any creditor of the Debtor, or any other party in interest in the Debtor's case, or any of his

respective attorneys or accountants, the United States Trustee or any person employed by the United

States Trustee.   HYLAND DEC., paragraph 7.

SCOPE OF SERVICES TO BE PROVIDED

Pursuant to the Listing Agreement, BROKER will provide services to the Debtor on behalf of

the Debtor's estate, regarding the PROPERTY, including, but not limited to the following:

(a)    Except for the exception set forth in the Listing Agreement, BROKER shall, on an

exclusive basis, market the PROPERTY for sale;

(b)    BROKER shall diligently advertise and market the PROPERTY for sale;

(c)    BROKER shall pursue procurement of buyers for the PROPERTY; and

(d)    BROKER shall advise and represent the Debtor in connection with any sale.

HYLAND DEC., paragraph 8.

TERMS OF COMPENSATION TO BROKER

As stated above, BROKER shall be entitled to compensation only if BROKER procures a

buyer for the PROPERTY and a sale of the PROPERTY, subject to approval by the Court, is

consummated, as a result of BROKER'S efforts, equal to a commission as set forth above.  Debtor

believes the proposed commission is reasonable and customary in the marketplace for the proposed

sales price of the PROPERTY. ROSS DEC, paragraph 8.   BROKER will not be keeping records of

time spent for professional services to Debtor, as BROKER's compensation is not based upon an

hourly rate. HYLAND DEC., Paragraph 9.

The BROKER further consents to the following. It:

1.    will not be compensated if the sale does not successfully close escrow;

2.    understands that the Court, and the Debtor, may reject any offer (even one at, or above, the listing price), for any reason without incurring any obligation to pay any commission;

3.    understands that any offer presented to the Court shall contain the following term: "The approval of this offer is subject to court order. All offers are subject to overbid unless the Court shall in writing order otherwise. No one shall have the power or authority to vary, supplement or alter this procedure; any promise to do so shall be void ab initio".

HYLAND DEC., Paragraph 10.

The Debtor seeks approval of the terms of compensation to BROKER consistent with section 328(a) of the Code, which provides that a trustee (in this case the debtor-in-possession) "with the court's approval, may employ or authorize the employment of a professional person under section 327 … on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." Accordingly, section 328(a) of the Code permits the Court to approve the fee arrangement as set forth herein.

In light of the scope of its employment, the Debtor will request that he be allowed to authorize the payment of BROKER'S sales commission pursuant to the Listing Agreement once the sale has been authorized by this Court, and after the sale has closed (or concurrent with the Closing from escrow), without further application to, or order of, the Court. ROSS DEC., paragraph 10.

## DEBTOR'S RIGHT TO MODIFY THE LISTING AGREEMENT WITHOUT OBTAINING FIRST AN ORDER OF COURT

The Debtor seeks further authority as part of this Application for

(a)    the right to modify the Listing Price at any time, as it deems necessary in its sole and absolute discretion, to effectuate either interest in, or a sale of, the PROPERTY; and

(b)    if the PROPERTY has not sold as of the respective termination of the Listing

Agreement (one year from entry into the Listing Agreement), to enter into an extension of the term of

the Listing Agreement provided the amount of the commission due BROKER is not increased from

that approved by this Application.

The BROKER consents to this.

ROSS DEC., paragraph 11; HYLAND DEC., paragraph 11.

### NOTICE OF APPLICATION

In compliance with Local Bankruptcy Rule 2014-1(b)(2), a Notice of this Application is being

served upon the Debtor, the United States Trustee, and all other creditors and parties in interest listed

in the Debtor's Schedules. A true and accurate copy of the Notice is attached as Exhibit "F" hereto,

and incorporated by reference.

### NO PRIOR REQUEST

No prior application for the relief requested herein has been made to this or any other Court.

### TERMS IN APPLICATION TO CONTROL

In the event of any discrepancy or inconsistency between the form of the Listing Agreement

attached hereto, and the terms described in this Application, the Application shall control. The

BROKER consents to this. ROSS DEC., paragraph 12; HYLAND DEC., paragraph 13.

WHEREFORE, the Debtor respectfully requests that an order be entered authorizing the

retention and employment of Broker effective as of September 16, 2010 (the date of the entry into the

Listing Agreements for the PROPERTY), as its real estate broker to market and sell the above-

described PROPERTY, pursuant to the terms substantially set forth in this Application, as

supplemented by the Listing Agreements, and further authorizing the Debtor, should it deem

necessary and desirable, to extend the term of the Listing Agreement and to modify the Listing Price

of the PROPERTY, as well as such further relief as is just and proper.

Dated: November 23, 2010

_____
Leonard Ross, individually and as Trustee
of the Leonard M. Ross Revocable Trust
U/T/D 12/20/85

Submitted by:

LAW OFFICES OF ROBERT M. YASPAN

By_____
Robert M. Yaspan
Debra R. Brand
Attorneys for Debtor-in-Possession

## DECLARATION OF LEONARD ROSS

I, LEONARD ROSS, being first duly sworn, declare and allege as follows:

1.   I am the Debtor in the above-entitled bankruptcy, and am also the trustee of the Leonard M. Ross Revocable Trust U/D/T 12/20/85.   I have personal knowledge of the facts stated herein and if called as a witness I could, and would, competently testify hereto.

2.   This Chapter 11 case was commenced by the filing of a Voluntary Petition under Chapter 11 of the Code by the Debtor on September 15, 2010 ("Petition Date").   I continue to operate my business and manage my affairs as a debtor-in-possession pursuant to sections 1107 and 1108 of the Code.

3.   A major issue involving the estate revolves around the PROPERTY, a major asset of mine, which consists of a single family residential property, of approximately 50,000 +/- square feet. The PROPERTY was formerly known as the "Beverly House", and has served as the venue for several major motion pictures.   The primary secured claimant is the Bank of America ("BOFA") with respect to an approximately $22,400,000 indebtedness.   I was behind on my payments to the BOFA as of the Petition Date and the BOFA had instituted foreclosure proceedings.   Immediately preceding the Petition Date, I engaged a professional appraisal for the home; the appraisal has been filed with the Office of the United States Trustee.

4.   On September 16, 2010, I entered into Residential Listing Agreements (Exclusive Authorization and Right to Sell) with Broker for sale of the PROPERTY, subject to the approval of this Court.   A true and accurate copy of the Listing Agreement, entered into on or about September 16, 2010, is attached as Exhibit "A" and incorporated herein by reference.   The Listing Agreement is a standard form agreement created by the California Association of Realtors, Inc. (other than the addendum) and is commonly used in the residential market.   There is an addendum attached to the

Listing Agreement that is incorporated into it.

5.    Among the more salient terms of the Listing Agreement are that:

(a)    the initial listing price for the PROPERTY is $95,000,000;

(b)    the Debtor agreed to compensate the BROKER on a contingency fee, subject to the sale of the Property.  The proposed commission payable in connection with the sale of the property would be as follows:

1.    When the buyer's broker is not the BROKER, then 1% of the Gross Selling Price to BROKER, and 1-3/4% of the Gross Selling Price to the buyer's broker, if and when the sale is confirmed by the Court, and the sale successfully consummates.

2.    When the buyer's broker is also the BROKER, 2 ½ % of the Gross Selling Price to the BROKER.

3.    When the prospective buyer is referred or directed to the BROKER by the Debtor (Seller), then the BROKER shall receive 1% of the Gross Selling Price.

4.    Notwithstanding anything to the contrary herein, the Debtor and the Debtor's Revocable Trust, has the right to market for sale or lease the PROPERTY.  Where the buyer, or any non-broker representative of any such buyer, is first shown or introduced to, the PROPERTY by the Debtor or the Debtor's Revocable Trust, the commission payable to BROKER shall be 0.75% of the Gross Selling Price if an agreement for sale to such buyer is entered into within 60 days of October 15, 2010, and 1% of the Gross Selling Price if a sales contract with any such buyer is entered into after 60 days of October 15, 2010, but during the term of the listing for sale.

5.    No commission shall be payable in the event a sale of the PROPERTY is not consummated by a buyer.  In the event that the deposit into escrow is forfeited into the estate for any reason (such as the failure of a buyer to consummate a sale after the Court approves the sale) no

commission shall be payable, or paid, and the funds shall be turned over to the Estate subject only to a payment of an escrow fee of not greater than $750.

6.     In the event of a lease of the PROPERTY to anyone first introduced or first shown the PROPERTY by BROKER, the commission payable to BROKER shall be $5,000 for each month of any such lease.

7.     The BROKER is authorized and directed to cooperate with and participate in the MLS (Multiple Listing Service) for the PROPERTY.

8.     The term of the listing was for one year from entering into the Listing Agreement on September 16, 2010 and terminating on September 15, 2011.

The foregoing is intended as a summary only of the material terms of the Listing Agreements. However, where this summary, or this Application, differs from the attachments hereto, this summary shall control.

6.     I believe it would be in the best interests of this estate and his creditors to employ BROKER as of September 16, 2010 and utilize the services of BROKER to market and sell the PROPERTY.   Other than as set forth in the Listing Agreement, there are no postfilng commitments or agreement as to the payment of compensation relating to the sale of the PROPERTY.

7.     To the best of my knowledge, BROKER does not hold or represent any interest adverse to me or my estate.

8.     I believe the proposed commission is reasonable and customary in the marketplace for the proposed sales price of the PROPERTY.

9.     I seek approval of the terms of compensation to BROKER consistent with section 328(a) of the Code.

10.     In light of the scope of its employment, I request that I am allowed to authorize the

payment of BROKER'S sales commission pursuant to the Listing Agreement once the sale has been authorized by this Court, and after the sale has closed (or concurrent with the Closing from escrow), without further application to, or order of, the Court.

11.    The BROKER further consents to my authority to do the following:

(a)    the right to modify the Listing Price at any time, as I deem necessary in my sole and absolute discretion, to effectuate either interest in, or a sale of, the PROPERTY; and

(b)    if the PROPERTY has not sold as of the respective termination of the Listing Agreement (one year from entry into the Listing Agreement), to enter into an extension of the term of the Listing Agreement provided the amount of the commission due BROKER is not increased from that approved by this Application.

12.    In the event of any discrepancy or inconsistency between the form of the Listing Agreement attached hereto, and the terms described in this Application, the Application shall control.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 23, 2010 at Beverly Hills, California.

Leonard Ross

12

## DECLARATION OF JEFF HYLAND

I, Jeff Hyland, declare and state:

1.      I am personally familiar with the contents of this Application as it pertain to Hilton & Hyland and me, as well as the statement set forth in this declaration, of which I have personal knowledge except for those stated to be based upon my knowledge, information and belief, and as to those I believe them to be true.  I submit this declaration in support of this Application to employ Broker[1].  I therefore could and would competently testify to the statements set forth herein, under oath, if called upon to do so.

2.      I am a licensed real estate broker, and have been so licensed since on or about 1973 (License No. 00389584) issued by the Department of Real Estate, State of California.  The term of my license expires on June 30, 2011.  I have had no disciplinary proceedings filed against me at any time. My license is associated with Hilton & Hyland, located at 250 N. Canon Drive, Suite 200, Beverly Hills, California 90210.  I am experienced in the listing of high-end real estate properties, and am knowledgeable as to the market in which the PROPERTY is being marketed.

3.      I make this declaration in support the Application filed by Debtor to employ Broker as the exclusive listing broker on the sale of the PROPERTY (subject to the exception set forth in the Listing Agreement).  Attached hereto as Exhibit B is a copy of my curriculum vitae and my profile from the firm's website.  Attached hereto as Exhibit C is a company profile that is set forth on the firm's website.

4.      On September 16, 2010, Debtor entered into Residential Listing Agreements (Exclusive Authorization and Right to Sell) with Broker for sale of the PROPERTY.  A true and accurate copy of the Listing Agreement, entered into on or about September 16, 2010, is attached as

---

[1] All terms not otherwise defined herein shall have the meaning given them in this Application.

Exhibit "A" and incorporated herein by reference.   The Listing Agreement is a standard form agreement created by the California Association of Realtors, Inc. and is commonly used in the residential market.   There is an addendum attached to the Listing Agreement that is incorporated into it.

5.    Among the more salient terms of the Listing Agreement are that:

(a)    the initial listing price for the PROPERTY is $95,000,000;

(b)    the Debtor agreed to compensate the BROKER on a contingency fee, subject to the sale of the Property, as described in the application.  I understand that, in the event of a discrepancy between the Application and the attached agreement, the Application shall control, and I consent to that.

6.    BROKER has shown the PROPERTY to several prospective buyers who have expressed interest.  BROKER has expended funds for advertising and marketing, and is as qualified as any to represent the Debtor in the sale of the PROPERTY.

7.    To the best of its knowledge, BROKER does not hold or represent any interest adverse to the Debtor or his estate.  BROKER is not a creditor of the Debtor and is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code.  Further, other than having a prior listing for the PROPERTY approximately 20 years ago, and other than listing other properties in which insiders of the Debtor have an interest, BROKER has no prior connection with the Debtor, any creditor of the Debtor, or any other party in interest in the Debtor's case, or any of his respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee.

8.    Pursuant to the Listing Agreement, BROKER will provide services to the Debtor on behalf of the Debtor's estate, regarding the PROPERTY, including, but not limited to the following:

(a)     Except for the exception set forth in the Listing Agreement, BROKER shall, on an exclusive basis, market the PROPERTY for sale;

(b)     BROKER shall diligently advertise and market the PROPERTY for sale;

(c)     BROKER shall pursue procurement of buyers for the PROPERTY; and

(d)     BROKER shall advise and represent the Debtor in connection with any sale.

9.     BROKER shall be entitled to compensation only if BROKER procures a buyer for the PROPERTY and a sale of the PROPERTY, subject to approval by the Court, is consummated, as a result of BROKER'S efforts, equal to a commission as set forth above.  The proposed commission is reasonable and customary in the marketplace for the proposed sales price of the PROPERTY. BROKER will not be keeping records of time spent for professional services to Debtor, as BROKER's compensation is not based upon an hourly rate.

10.    The BROKER further consents to the following.  It:

A.     will not be compensated if the sale does not successfully close escrow;

B.     understands that the Court, and the Debtor, may reject any offer (even one at, or above, the listing price), for any reason without incurring any obligation to pay any commission;

C.     understands that any offer presented to the Court shall contain the following term: "The approval of this offer is subject to court order.  All offers are subject to overbid unless the Court shall in writing order otherwise.  No one shall have the power or authority to vary, supplement or alter this procedure; any promise to do so shall be void ab initio".

11.    The BROKER further consents to Debtor's authority to do the following:

(a)     the right to modify the Listing Price at any time, as it deems necessary in his sole and absolute discretion, to effectuate either interest in, or a sale of, the PROPERTY; and

(b)     if the PROPERTY has not sold as of the respective termination of the Listing

Agreement (one year from entry into the Listing Agreement), to enter into an extension of the term of

the Listing Agreement provided the amount of the commission due BROKER is not increased from

that approved by this Application.

12.    Other than as set forth in the Listing Agreements, with respect to sharing commission

with the procuring broker participating in the MLS, as is customary in the industry, I am not aware of

any other agreement to share any portion of the commission to be received with any other person or

entity, other than the within Broker's office.

13.    In the event of any discrepancy or inconsistency between the form of the Listing

Agreement attached hereto, and the terms described in this Application, the Application shall control.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed on November 22, 2010 at Beverly Hills, California.

Jeff Hyland
Jeff Hyland

## DECLARATION OF TATYANA K. MENACHIAN

I, TATYANA K. MENACHIAN, being first duly sworn, declare and allege as follows:

I have personal knowledge of the facts stated herein and if called as a witness I could, and would, competently testify hereto.

Attached hereto as Exhibit "D", is a true and correct copy of the Notice of Debtor's Intension to Employ Hilton & Hyland as Real Estate Brokers.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 24, 2010 at Beverly Hills, California.

Tatyana K. Menachian

# EXHIBIT A



CALIFORNIA
ASSOCIATION
OF REALTORS®

# RESIDENTIAL LISTING AGREEMENT
### (Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 2/09)

1. **EXCLUSIVE RIGHT TO SELL:** _Leonard M. Ross , Revocable Trust , See item #16_ ("Seller")
hereby employs and grants _Hilton & Hyland_ ("Broker")
beginning (date) _September 16, 2010_ and ending at 11:59 P.M. on (date) _September 15, 2011_ ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property in the City of _Beverly Hills_,
County of _Los Angeles_, Assessor's Parcel No. _4348-001-023_,
California, described as: _1011 North Beverly Drive_ ("Property").

2. **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
**ADDITIONAL ITEMS EXCLUDED:** _To be provided by Seller prior to acceptance of an offer_.
**ADDITIONAL ITEMS INCLUDED:**
Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

3. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: _Ninety-Five Million_
   Dollars ($ _95,000,000.00_ ).
   B. Additional Terms: _See attached contract Addendum #1 (one)_

4. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☐ _____ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☒ $ _____
   AND _see Addendum #1_, as follows:
   ~~(1) If during the Listing Period, or any extension, Broker, Seller, cooperating broker, or any other person procures a buyer(s)~~ who offers to purchase the Property on the above price and terms, or on any price and terms acceptable to Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period.)
   OR (2) If within _____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 4A(2) unless, not later than **3 calendar days** after the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
   OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise ~~transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.~~
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation due under paragraph 4A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: _____
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
   (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering MLS brokers either ☒ _1.750_ percent of the purchase price, or ☐ $ _____
   (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 4A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee. _WHICH HAS NOT EXPIRED_
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _See attached Contract Addendum #1 (one)_
   (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _____
   (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2009, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Seller acknowledges receipt of a copy of this page.
Seller's Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____

EQUAL HOUSING OPPORTUNITY

RLA REVISED 2/09 (PAGE 1 OF 3)

## RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 3)

Agent: Jeff Hyland  Phone: (310) 278-3311  Fax: (310) 278-8088  Prepared using zipForm® software
Broker: Hilton & Hyland 250 N. Canon Dr. Beverly Hills, CA 90210

Property Address: *1011 North Beverly Drive, Beverly Hills,*                    Date: *September 16, 2010*

5. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows:

6. **MULTIPLE LISTING SERVICE:** All terms of the transaction, including financing, if applicable, will be provided to the selected MLS for publication, dissemination and use by persons and entities on terms approved by the MLS. Seller authorizes Broker to comply with all applicable MLS rules. MLS rules allow MLS data about the Property to be made available by the MLS to additional Internet sites unless Seller gives Broker instructions to the contrary. MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 48 hours or some other period of time after all necessary signatures have been obtained on the listing agreement. However, Broker will not have to submit this listing to the MLS or can prohibit this listing or certain information from or about it from appearing on certain internet sites if, Broker submits to the MLS such an instruction signed by Seller (C.A.R. Form SEL or the locally required form). Information about this listing will be provided to the MLS of Broker's selection unless a form instructing Broker to the contrary is attached to this listing Agreement.

7. **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

8. **BROKER'S AND SELLER'S DUTIES:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized to order reports and disclosures as appropriate or necessary and advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium. Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property. **Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments and attorney fees arising from any incorrect information supplied by Seller, or from any material facts that Seller knows but fails to disclose.**

9. **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

10. **AGENCY RELATIONSHIPS:**
   A. **Disclosure:** If the Property includes residential property with one-to-four dwelling units, Seller shall receive a "Disclosure Regarding Agency Relationships" form prior to entering into this Agreement.
   B. **Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 4F.
   C. **Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and such Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: (i) Broker, without the prior written consent of Seller, will not disclose to Buyer that Seller is willing to sell the Property at a price less than the listing price; (ii) Broker, without the prior written consent of Buyer, will not disclose to Seller that Buyer is willing to pay a price greater than the offered price; and (iii) except for (i) and (ii) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.
   D. **Other Sellers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement.
   E. **Confirmation:** If the Property includes residential property with one-to-four dwelling units, Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

11. **SECURITY AND INSURANCE:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller.

12. ~~**KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied~~ prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are **not** insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox.

13. ~~**SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.~~

14. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

15. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker regarding the obligation to pay compensation under this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 19A.

16. **ADDITIONAL TERMS:** *Seller: Leonard M. Ross Revocable Trust as Trustee of the Leonard M. Ross Revocable Trust (u-d-t 12/20/85).*

Seller acknowledges receipt of a copy of this page.
Seller's Initials ( ) ( )

Reviewed by _____ Date _____



Copyright © 1991-2009, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RLA REVISED 2/09 (PAGE 2 OF 3)

RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 3)                    1011 North Bev

1011 North Beverly Drive

Property Address: **Beverly Hills,** _____    Date: **September 16, 2010**

17. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within 5 Days After its execution.

18. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

19. **DISPUTE RESOLUTION:**

   A. **MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action, subject to paragraph 19B(2) below. Paragraph 19B(2) below applies whether or not the arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

   B. **ARBITRATION OF DISPUTES: (1)** Seller and Broker agree that any dispute or claim in law or equity arising between them regarding the obligation to pay compensation under this Agreement, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraph 19B(2) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered in any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.

   **(2) EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or installment land sale contract as defined in California Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims, or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.

   "**NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.**"

   "**WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.**"

|  | Seller's Initials ___/___ | Broker's Initials ___/___ |
|---|---|---|

20. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.

Seller _____    **Leonard M. Ross   Revocable Tr** Date **9/16/2010**
Address _____    City _____    State ____  Zip ____
Telephone _____    Fax _____    E-mail _____

Seller _____    **See item #16** Date _____
Address _____    City _____    State ____  Zip ____
Telephone _____    Fax _____    E-mail _____

Real Estate Broker (Firm) _____    **Hilton & Hyland** DRE Lic. # _____
By (Agent) _____    **Jeff Hyland** DRE Lic. # **589584**    Date **Sept. 16, 2010**
Address **250 North Canon Drive**    City **Beverly Hills**    State **Ca**  Zip **90210**
Telephone **(310) 278-3311**    Fax **(310) 278-8088**    E-mail **jeff@jeffhyland.com**

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ | Date _____ |
|---|---|

RLA REVISED 2/09 (PAGE 3 OF 3)

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 3)**    1011 North Bev

## ADDENDUM TO RESIDENTIAL LISTING AGREEMENT
### Regarding 1011 North Beverly Drive, Beverly Hills, California

The following shall constitute an Addendum to the Residential Listing Agreement ("Agreement") to sell the subject property ("Property" herein) dated August 13, 2010 between Hilton & Hyland ("Broker") and the Leonard M. Ross Revocable Trust (u/d/t 12-20-85) ("Seller" herein) and shall supersede anything to the contrary contained in the Residential Listing Agreement:

1.  The commission payable by Seller for which a commission is payable under this Agreement, shall be as follows:  *(ONLY ONE OF THE FOLLOWING):*

    a.  One percent 1% of the Gross Selling Price to selling agent and 1¼% of the Gross Selling Price to the Broker when there is a selling agent for buyer which selling agent is not Broker.

    b.  2.5% of the Gross Selling Price if Buyer is represented by *JEFF HYLAND.*

    c.  One percent (1%) of the Gross Selling Price if the prospective Buyer was referred or directed to Broker by any of Seller at any time during the term hereof.

    d.  Notwithstanding anything to the contrary herein, this is to confirm that Leonard M. Ross, and The Leonard M. Ross Revocable Trust (u/d/t 12-20-85) ("LMR" herein), owner of the 1011 North Beverly Drive property has the right to market for sale and lease the subject property. In connection with any sale of the subject property to a Buyer, which Buyer or any non broker representative of any such Buyer is first shown or introduced to the property by LMR, the commission payable to Jeff Hyland and Hilton & Hyland ("Hyland" herein) collectively shall be three quarters of one percent of the selling price if an agreement for sale to such Buyer is entered into within 60 days from the days hereof, and one percent the gross selling price if a sales contract with any such Buyer is entered into after 60 days from the date hereof but during the term of the listing for sale. Notwithstanding the foregoing, no commission shall be payable in the event a sale is not consummated to any such Buyer. In the event of a lease of subject property to anyone first introduced or first shown the property by the undersigned, the commission payable to Hyland collectively shall be five thousand dollars for each separate month of any such lease.

The commission shall be earned if, during the term of this Agreement (or any extension thereof) the Property is sold, and the deed is recorded in connection with such sale, to any Buyer other than those persons excluded in Paragraph 7 below;

1

Alternatively, the commission shall be earned if, during the period of 60 days following expiration of this Agreement, the Property is sold and a deed in connection with such sale is recorded to any person (exclusive of the persons referred to in paragraph 4 hereof) to whom Broker or a cooperating broker has shown the Property (which has been sold) in connection with potential sale of such Property during the term of this Agreement, and if, and only if, Broker has furnished the name of such person to Seller, in writing by certified mail, within 10 days following the expiration of this Agreement.

2. Seller shall have the right to negotiate with others with regard to a potential or actual sale of the Property but, except with regard to the excluded Persons referenced in paragraph 4 hereof, Broker shall be entitled to the commission set forth in paragraph 1(c) above if otherwise payable hereunder (i.e. sale is consummated).

3. Seller and the beneficial owner of Seller holds a California Real Estate broker's license.

4. There shall be no commission payable unless a sale covered hereby is consummated, notwithstanding Seller withdrawing the Property from sale or leasing the Property.

5. Participating Brokers.

Should a closing occur, it will be Broker's responsibility to pay and disburse any commission to any other cooperating brokers, salespersons, finders, or other persons (collectively "other cooperating persons") involved in such sale.

6. Best Efforts.

Broker agrees to utilize its best efforts in connection with the extensive advertising, marketing and sale of the Property. Such marketing efforts are a material inducement to enter into this Agreement and Addendum.

7. All showings shall be pre-approved by Seller in the sole and absolute discretion of Seller and shall be to pre-qualified clients only.

2

8. <u>Time of Essence</u>:

Time is expressly of the essence for all purposes pertaining to this Agreement.

9. <u>Subject to Court Approval</u>: This Agreement and Addendum is subject to Court approval.

IN WITNESS WHEREOF, this Addendum is signed as set forth below.

"Seller"
The Leonard M. Ross Revocable Trust
(u/d/t 12-20-85)

Dated: September 16, 2010

By _____
Leonard M. Ross, Trustee

"Broker"
Hilton & Hyland

Dated: September 16, 2010

By _____
Jeff Hyland

3

CALIFORNIA
ASSOCIATION
OF REALTORS®

**Seller's Advisory**
(C.A.R. Form SA, Revised 10/01)

Property Address: <u>1011 North Beverly Drive, Beverly Hills</u> _____ ("Property")

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker for help.

2. **DISCLOSURES:**
   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If the Property you are selling is a residence with one to four units, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   B. **Statutory Duties:** (For one-to-four Residential Units):
      **(1)** You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.
      **(2)** Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets titled "The Homeowners Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
      **(3)** If you know that your property is: **(i)** located within one mile of a former military ordnance location; or **(ii)** in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act.
      **(4)** If the TDS, NHD, or lead, military ordnance, commercial zone or Mello-Roos disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements. However, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death. However, California Civil Code Section 1710.2 provides that <u>you have no disclosure duty</u> "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   D. **Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowners' association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Seller acknowledges receipt of copy of this page.

Seller's Initials ( _____ ) ( _____ )

Reviewed by _____

Broker or Designee _____ Date _____

EQUAL HOUSING
OPPORTUNITY

**SA-11 REVISED 10/01 (PAGE 1 OF 2)**

**SELLER'S ADVISORY (SA-11 PAGE 1 OF 2)**

Property Address: *1011 North Beverly Drive, Beverly Hills* _____ Date: *September 16, 2010*

**3. CONTRACT TERMS AND LEGAL REQUIREMENTS:**

A. **Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

B. **Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

C. **Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

D. **Government Retrofit Standards:** Unless exempt, you must comply with government retrofit standards, including, but not limited to, installing operable smoke detectors, bracing water heaters, and providing the buyer with corresponding written statements of compliance. Some city and county governments may impose additional retrofit standards, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine the retrofit standards for your Property, the extent to which your Property complies with such standards, and the costs, if any, of compliance.

E. **Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

**4. MARKETING CONSIDERATIONS:**

A. **Pre-Sale Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional home inspections prior to sale, both generally, and for wood destroying pests and organisms, such as termites. By doing this, you then have an opportunity to make repairs before your Property is offered for sale, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a pest control report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

B. **Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

C. **Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video-tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property against injury, theft, loss, vandalism, damage, and other harm.

D. **Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

**5. OTHER ITEMS:** _____
_____
_____
_____
_____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller _____   Date _____

Print Name *Leonard M. Ross    Revocable Tr*

Seller _____   Date _____

Print Name *See item #16*

Real Estate Broker *Hilton & Hyland*    By _____
 (Agent) *Jeff Hyland*

Address *250 North Canon Drive*    City *Beverly Hills*    State *CA*    Zip *90210*

Telephone *(310)278-3311*    Fax *(310)278-8088*    E-mail *jeff@jeffhyland.com*

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____
Broker or Designee _____ Date _____

*Leonard M. Ross*

*1009 North Beverly Drive*
*Beverly Hills, CA 90210*
*(310) 278-8193 * (310) 278-9677 (telecopier)*
*E-mail: lross@rossco.com*

September 16, 2010

Jeffrey Hyland
Hilton & Hyland
250 No. Canon Drive
Beverly Hills, California 90210

> Re:   **Leasing Efforts**

Dear Jeff:

As discussed, this is to confirm that Leonard M. Ross, and The Leonard M. Ross Revocable Trust (u/d/t 12-20-85) ("LMR" herein), owner of the 1011 North Beverly Drive property has the right to market for sale and lease the subject property. In connection with any sale of the subject property to a Buyer, which Buyer or any non broker representative of any such Buyer is first shown or introduced to the property by LMR, the commission payable to Jeff Hyland and Hilton & Hyland ("Hyland" herein) collectively shall be ~~one-half of one percent of~~ the selling price if an agreement for sale to such Buyer is entered into within 60 days from the days hereof, and one percent the gross selling price if a sales contract with any such Buyer is entered into after 60 days from the date hereof but during the term of the listing for sale. Notwithstanding the foregoing, no commission shall be payable in the event a sale is not consummated to any such Buyer. In the event of a lease of subject property to anyone first introduced or first shown the property by the undersigned, the commission payable to Hyland collectively shall be five thousand dollars for each separate month of any such lease.

*THIS AGREEMENT IS SUBJECT TO COURT APPROVAL.*

Please sign in the space provided below confirming your agreement to the foregoing.

Very truly yours,

Leonard M. Ross, individually and Trustee of
The Leonard M. Ross Revocable Trust (u/d/t 12-20-85)

ACKNOWLEDGED and AGREED:

Jeffrey Hyland, individually and
as President of Hilton & Hyland

# EXHIBIT B

# *Curriculum Vitae*

## Jeff Hyland

B.S. Business Administration United States International
University

Licensed Real Estate Broker in California since 1976

President of Alvarez, Hyland & Young, 1976 to 1993

President of Hilton & Hyland, 1993 to present

Past President of Beverly Hills Board of Realtors, Chairman of
Professional Standards Committee, Realtor of The Year

State Director, California Association of Realtors, five years

Past President of the 30,000 member Los Angeles County Boards
of Real Estate

Named by Town & Country Magazine as the "Gatekeeper" to
Holmby Hills and Bel-Air

Robb Report "Best of the Best"

Founding member of Christie's Great Estates and
Co-Chair, Advisory Board

Director, Who's Who in Luxury Real Estate

Co-author of " The Estates of Beverly Hills"

Author and Publisher: "The Legendary Estates of Beverly Hills"

# HILTON & HYLAND

*Exclusive Affiliate of* CHRISTIE'S GREAT ESTATES

ASSOCIATE

Home

Associates



## Jeff Hyland

[310] 278-3311
jeff@hiltonhyland.com
www.thelegendaryestatesofbeverlyhills.com
www.hauteliving.com/2007/10/a-masterpiece-unveiled/

Jeffrey Hyland is President of Hilton & Hyland, a luxury real estate brokerage firm in Beverly Hills, California, and he is the author of the just-published The Legendary Estates of Beverly Hills, the definitive history of the most famous estates in three of America's most prized residential districts: Beverly Hills, Holmby Hills, and Bel-Air.

Hilton & Hyland

Founded in 1993 by Rick Hilton and Jeffrey Hyland, Hilton & Hyland is a luxury residential and commercial real estate brokerage firm in Beverly Hills. The firm specializes in Beverly Hills, Holmby Hills, Bel-Air, Brentwood, Pacific Palisades, Malibu, and the Hollywood Hills, as well as luxury estates from Santa Barbara to San Diego.

Hilton & Hyland is a founding member and exclusive affiliate of Christie's Great Estates, Inc., the largest network of independent real estate brokers specializing in the marketing and sale of luxury properties. Jeffrey Hyland is a member of the Advisory Board of Christie's Great Estates.

The Legendary Estates of Beverly Hills

In The Legendary Estates of Beverly Hills, Jeffrey Hyland takes readers inside the front gates and behind the hedges of 50 of America's most coveted estates that have been home to countless celebrities and the world's wealthiest families for almost a century. Over 350 color photographs offer readers never-before-seen views of these mansions, their interiors, and their grounds today. The 428-page book is coffee table format 12-by-16-inches.

http://www.thelegendaryestatesofbeverlyhills.com

These estates range from 1920s Spanish Colonial Revival landmarks, to sleek and elegant 1930s Modern masterpieces, to contemporary residences designed by some of the world's best-known architects. Many estates have noted art collections.

This 428-page book offers a meticulously researched and lavishly illustrated history of Beverly Hills, Holmby Hills, and Bel-Air. Each chapter tells the fascinating story of each estate from its original plans to the present day, from the visions of the architects and landscape designers, to the lives of the original owners who created these masterpieces, including their intrigues, tragedies, and romances. The book brings the story of each estate up to the present day.

The Legendary Estates of Beverly Hills includes an in-depth history of the exclusive neighborhoods of Beverly Hills, Holmby Hills, and Bel-Air, from their original planning through the decades of development of these long-desirable communities. The final chapter, "Gone But Not Forgotten," pays homage to great estates that have sadly disappeared forever with dozens of never-before-published photographs.

Jeffrey Hyland's Background

Born and raised in Little Holmby near UCLA in Los Angeles, Jeffrey Hyland has sold real estate in Beverly Hills for over 25 years and has personally handled several billion dollars in transactions.

Jeffrey Hyland has served as President of the Beverly Hills Board of Realtors and as President of the Los Angeles County Boards of Real Estate. He has also served as a State Director of the California Assoc

| LISTINGS | SPECIAL PROJECTS | COMMERCIAL DIVISION | ASSOCIATES |

Jeffrey Hyland is an authority on Southern California real estate, architecture, and history, and he is frequently quoted in the New York Times, Wall Street Journal, and Los Angeles Times. He assisted in the publication of books on famed architects Wallace Neff and Paul Williams.

He co-authored his first book, The Estates of Beverly Hills, which was hailed by the New York Times Book Review as a "lavish, riveting book . . . about these fantasy kingdoms, most of them never seen before, all of them accompanied by a fascinating historical text."

« back to associates

250 North Cañon Drive  Beverly Hills, CA 90210                          310.278.3311

© Copyright 2010 Hilton & Hyland. All rights reserved. November 09, 2010 | Sitemap

# EXHIBIT C



# HILTON & HYLAND
*Exclusive Affiliate of* CHRISTIE'S GREAT ESTATES

LISTINGS | SPECIAL PROJECTS | COMMERCIAL DIVISION | ASSOCIATES

COMPANY

Home
Our Company
Client List
History
Founders
Christie's Great Estates
Press Releases
Internal Login

**HILTON & HYLAND** is one of the preeminent residential and commercial Real Estate brokerages in Los Angeles exclusive luxury market. The firm was founded by Rick Hilton and Jeff Hyland, two of the most successful executives in the Beverly Hills real estate community. The firm specializes in the communities of Beverly Hills, Bel-Air, Westwood, Brentwood, Pacific Palisades, Malibu and West Hollywood. Jeff Hyland's career spans 25 years as a leading real estate broker. In addition to being the founding member of Christie's Great Estates, Inc., Jeff is also a past President of the Beverly Hills Board of Realtors and co-authored the book The Estates of Beverly Hills. Jeff's The Legendary Estates of Beverly Hills was recently published by Rizzoli. As an architectural historian, Jeff assisted in the publication of books on Wallace Neff and Paul Williams.

Rick Hilton's endeavors include a broad range of successful pursuits in real estate, including residential and commercial real estate sales, development and financing. As a principal, Rick developed Brentwood Country Estate, a 13-parcel, guard-gated estate community in the Mandeville Canyon area of West Los Angeles.

For Rick Hilton & Jeff Hyland, their partnership represents a unique and dynamic combination of success, expertise and experience. Both of the principals, along with the entire staff at Hilton & Hyland, distinguish themselves as sophisticated industry veterans who are committed to redefining personal service.

250 North Canon Drive, Beverly Hills, CA 90210    310.278.3311

© Copyright 2010 Hilton & Hyland. All rights reserved. November 09, 2010 | Sitemap

# EXHIBIT D

1   ROBERT M. YASPAN, SBN #051867
    LAW OFFICES OF ROBERT M. YASPAN
2   21700 Oxnard Street, Suite 1750
    Woodland Hills, California 921367
3   Telephone: (818) 774-9929
    Facsimile: (818) 774-9989
4   [Proposed] General Counsel for
5   Debtors-in-Possession

6

7                    **UNITED STATES BANKRUPTCY COURT**
                       **CENTRAL DISTRICT OF CALIFORNIA**
8                            **LOS ANGELES DIVISION**

9
    In re                          )  Chapter  No.:   11
10                                 )
    Leonard Ross                   )  Case No.: 1:10-bk-49358-VZ
11                                 )
12                                 )  NOTICE OF DEBTOR'S INTENTION TO
                        Debtor     )  EMPLOY HILTON & HYLAND AS
13                                 )  REAL ESTATE BROKERS
                                   )
14                                 )  [No Hearing required unless requested per
15                                 )  L.B.R. 2014-1(b)(1)(C)]
                                   )
16  _____  )

17        PLEASE TAKE NOTICE that Leonard Ross, the debtor and debtor-in-possession herein

18  ("Debtor") filed an application with the Court seeking authority to employ the firm of Hilton &

19  Hyland as the listing real estate broker ("Application"), to represent the Debtor in connection with

20  the sale of the real property located at 1011 North Beverly Drive, Beverly Hills California 90210

21  ("PROPERTY"), on a commission basis.  Authority is sought pursuant to sections 327 and 328 of the

22
23  United States Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and the applicable Local

24  Bankruptcy Rules.

25        The Application seeks to employ Broker pursuant to the terms of Residential Listing

26
    Agreements, under an exclusive authorization, for a term of one year, which commenced on and after
27
28  September 16, 20010 ("Agreements"). A true and accurate copy of the Listing Agreement for the

respective Property is attached to the Application and is on file with the Clerk of the Court.

The proposed commission payable in connection with the sale of the property is in line with similar listing agreements for high end properties. In general, the commission payable is no more than 2.75%, and under certain circumstances, may well be lower. The complete application should be consulted for the terms of the agreement.  It is not the intention of this notice to vary those terms.

The Debtor will seek as a part of the order approving the Application the right to modify the original Listing Price as the Debtor, in its sole judgment and discretion, determines reasonably necessary to effectively market the PROPERTY for sale for the highest and most favorable price and terms.

The actual sale of the PROPERTY will be subject to approval of the above-entitled Court, on notice to creditors and other interested parties.

The Debtor will request that the Order approving the Application and employment of Broker to be effective as of September 16, 2010.

A copy of the Application can be viewed on the Court's docket in this case, or obtained from Debtor's counsel by written request to Law Offices of Robert M. Yaspan, 21700 Oxnard Street, Suite 1750, Woodland Hills, California 91367.

In accordance with the Local Bankruptcy Rules, any response in opposition to the Application and request for hearing on the Application must (i) be in the form required by Local Bankruptcy Rule 9013—1(f)(1); (ii) be filed with the Court; and (iii) a copy served upon the Debtor and its counsel, Law Offices of Robert M. Yaspan at the address indicated above, and upon the United States Trustee, Office of the United States Trustee, at 725 So. Figueroa Street, 26th Floor, Los Angeles, CA 90017, not later than 15 calendar days from the date of service of this notice.  If no response and request for hearing is filed, the Court may consider the lack of response to constitute a consent to the requested

1   relief, and enter an order approving the Application without a hearing.

2

3
     Dated:  November 24, 2009              LAW OFFICES OF ROBERT M. YASPAN
4

5

6                                          By_____
                                              Robert M. Yaspan
7                                             Debra R. Brand
                                              Attorneys for Debtor-in-Possession
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 21700 Oxnard Street, Suite 1750, Woodland Hills CA 91367

A true and correct copy of the foregoing document described **NOTICE OF DEBTOR'S INTENTION TO EMPLOY HILTON & HYLAND AS REAL ESTATE BROKERS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 24, 2010** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Henkie F Barron    hbarron@winston.com, docketsf@winston.com
- Michael S Greger    mgreger@allenmatkins.com
- Michael S Kogan    mkogan@ecjlaw.com
- Dare Law    dare.law@usdoj.gov
- Justin E Rawlins    jrawlins@winston.com, docketla@winston.com
- David B Shemano    dshemano@pwkllp.com
- Ramesh Singh    claims@recoverycorp.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Thomas B Ure    tbuesq@aol.com, ThomasUre@aol.com
- Joshua D Wayser    joshua.wayser@kattenlaw.com, kim.johnson@kattenlaw.com
- Robert M Yaspan    court@yaspanlaw.com, tmenachian@yaspanlaw.com

II. **SERVED VIA FIRST CLASS MAIL (indicate method for each person or entity served):**
On **November 24, 2010,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

SEE ATTACHED SERVICE LIST

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 24, 2010 | Tatyana K. Menachian | _(signature)_ |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010

F 9013-3.1.PROOF.SERVICE

Leonard M. Ross
1011 No. Beverly Drive
Beverly Hills, CA 90210

Bank of America
201 East Washington Street
Phoenix, AZ 85004

Capital One Auto Finance
3905 N. Dallas Pkwy
Plano TX 75093

Chase Auto Finance
1820 E. Sky Harbor Circle S
Phoenix, AZ 85034

Merri Jean Ross
1023 N. Roxbury Drive
Beverly Hills, CA 90210

*Attorney for Nataalia Rey*
Charles Wake
Law Office of Charles Wake
1901 Ave of the Stars Ste 1700
Los Angeles, CA 90067

Pacific Mercantile Bank •
9720 Wilshire Boulevard
Beverly Hills, CA 90212

Rossco Holdings Incorporated
1011½ N. Beverly Drive•
Beverly Hills, California 90210

Wells Fargo Financial Leasing
2012 Corporate Lane, Suite 108
Napperville, IL 60197-6434

Amer. Express
2965 W. Corporate Lakes Blvd
Weston FL 33331

Citizen's Bank
328 S. Saginaw St
Flint MI 48502

Bellagio Hotel
3600 Las Vegas Blvd South
Las Vegas, NV 89109

JP Morgan Private Bank
270 Park Ave
New York, NY 10017

OneWest Bank FSB
390 West Valley Parkway
Escondido, CA 92025

Prosperity Bank
2202 Longmire Drive
College Station, Texas 77845

OneWest Bank FSB
390 West Valley Parkway
Escondido, CA 92025

Rossco MP Properties Co. LLC
1011½ N. Beverly Drive
Beverly Hills, CA 90210

RFF Family Partnership, LP
226 Twenty-Third Street
Santa Monica, California 90402

National Guardian Life Insurance Co.
Two East Gilman Street
Madison, WI 53703

Chase Home Finance
3415 Vision Drive
Columbus OH 43219

*Chamber Copy*
The Hon. Vincent Zurzolo
255 E. Temple Street, Suite 1360
Courtroom 1368
Los Angeles, CA 90012

Office of the United States Trustees
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

Stuart R. Richter
Katten Muchin Roseman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067

WINSTON & STRAWN LLP
David L. Aronoff
Justin Rawlins
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543

*Request for Special Notice*
Ascension Capital Group
2201 E. Lamar Blvd.
Arlington, TX 76006

*Attorney for Nataalia Rey*
J. Bennett Friedman
1901 Avenue of the Stars, Suite 1700
Los Angeles CA 90067

Hilton & Hyland
250 N. Canon Drive, Suite 200,
Beverly Hills, California 90210.

Label Matrix for local noticing
0973-2
Case 2:10-bk-49358-VZ
Central District Of California
Los Angeles
Wed Nov 24 10:41:22 PST 2010

Capital One Auto Finance Department
P.O. Box 201347
Arlington, TX 76006-1347

Los Angeles Division
255 East Temple Street,
Los Angeles, CA 90012-3332

AT&T
Payment center
Sacramento, CA 95887-0001

Absolute Pool & Spa
3145 Coldwater Canyon
Studio City, CA 91604-4035

(p)ADVANTA
700 DRESHER RD
HORSHAM PA 19044-2206

Advanta Platinum Business Card
PO Box 8088
Philadelphia, PA 19101-8088

Amer. Express
Box 0001
Los Angeles, CA 90096-8000

Amer. Express (Blue Card) 'Optima'
Box 0001
Los Angeles, CA 90096-8000

American Express Centurion Bank
c o Becket and Lee LLP
POB 3001
Malvern, PA 19355-0701

Aquarium Master
7623 Bay Drive #1
Huntington Beach,  CA 92648-5858

BTU
PO Box 8000
Bryan, TX 77805-8000

Bank of America
201 East Washington Street
Phoenix, AZ 85004-2428

Bank of America
PO Box 15710
Wilmington, DE 19886-5710

Bank of America
PO Box 301200
Los Angeles, CA 90030-1200

Bank of America
Platinum Plus Business Card
PO Box 15710
Wilmington, DE 19886-5710

Bellagio Hotel
3600 Las Vegas Blvd South
Las Vegas, NV 89109-4339

Brentwood Country Club
590 South Burlingame Avenue
Los Angeles, CA 90049-4896

Caesars Palace  Hotel
3475 Las Vegas Blvd. South
Las Vegas, NV 89109-8922

Caesars Palace Hotel & Casino
% Robert G. Aisenstein, Esq.
2114 Fountain Springs Drive
Henderson, Nevada 89074-1575

California Choice
PO Box 7088
Orange, CA 92863-7088

Capital One Auto Finance
PO Box 60511
City of Industry, CA 91716-0511

Capital One Auto Finance, c/o Ascension Capi
P.O. Box 201347
Arlington, TX 76006-1347

Carolina Casulty Insurance Co.
c/o Chad B. Wootton
119 1/2 N. Larchmont Blvd. Ste 2
Los Angeles CA 90004-3704

Chase Auto Finance
PO Box 78101
Phoenix, AZ 85062-8101

Chase Bank USA, N.A.
PO Box 15145
Wilmington, DE 19850-5145

Chase Home Finance
PO Box 78420
Phoenix, AZ 85062-8420

Citi Card
PO Box 688901
Des Moines, IA 50368-8901

Citizen's Bank
P. O. Box 42115
Providence, RI 02940-2115

Citizens Bank
480 Jefferson Blvd
RJE 135
Warwick RI 02886-1359

Del Mar
2260 Jimmy Durante Blvd
Del Mar, CA 92014-2216

Erwin, Cohen & Jessup
9401 Wilshire Blvd., 9th Fl.
Beverly Hills, CA 90212-2928

Fia Card Services, NA As Successor In Intere
Bank of America NA and Mbna America Bank
1000 Samoset Drive
DE5-023-03-03
Newark, DE 19713-6000


Fireman's Fund Insurance
PO Box 7288
Pasadena, CA 91109-7388

FirstLease, Inc.
c/o Martin F. Goldman
10880 Wilshire Blvd. Ste 2240
Los Angeles CA 90024-4123

Fitness Club Warehouse Inc.
Accounts Service Department
PO Box 731
Mahwah, NMJ  07430-0731


Ford Credit
PO Box 7172
Pasadena, CA 91109-7172

HSBC Business Solutions
PO Box 5219
Carol  Stream, IL 60197-5219

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326


JP Morgan Private Bank
PO Box 94014
Palatine, IL 60094-4014

JPMorgan Chase  Bank, N.A.
201 N. Central Ave.
AZ1-1191
Phoenix,AZ 85004-0073

Kessler and Kessler
1800 Century Park East Ste 400
Los Angeles CA 90067-1507


Kirstina C. Royce
Butler, Buzard, Fishbein & Royce LLP
11611 San Vicente Boulevard, Suite 820
Los Angeles, CA 90049-6508

Megapath Inc.
Dept. 0324
PO Box 120324
Dallas, TX 75312-0324

Mendes and Mount
c/o Michael McCarthy
15260 Ventura Blvd Ste 920
Sherman Oaks CA 91403-5344


Merri Jean Ross
1023 N. Roxbury Drive
Beverly Hills, CA 90210-3021

Nataalia Rey
9196 Thrasher Avenue
Los Angeles, CA 90069-1129

National Guardian Life Insurance Co.
Two East Gilman Street
Madison, WI 53703-1494


OneWest Bank FSB
390 West Valley Parkway
Escondido, CA 92025-2635

Pacific Mercantile Bank
9720 Wilshire Boulevard
Beverly Hills, CA 90212-2021

Pacific Mercantile Bank
Beverly Hills, California


Prosperity Bank
2202 Longmire Drive
College Station, Texas 77845-5231

Quality Enterprises
11378 Hichory Road
College Station, TX 77845-6207
Unit F, Unit I

R Schnitman MD
435 N Bedford Dr
Lower Level No 1
Beverly Hills CA 90210-4321


RFF Family Partnership, LP
226 Twenty-Third Street
Santa Monica, California 90402

Rock N'Roll-Off
a Recycling & Disposal Co.
PO Box 144
Agoura Hills, CA 91376-0144

Rossco Holdings Inc
10111/2 N Beverly Dr
Beverly Hills CA 90210


Rossco Holdings Incorporated
1011 N. Beverly Drive
Beverly Hills,  California 90210-2328

Rossco MP Properties Co. LLC
1011 N. Beverly Drive
Beverly Hills, CA 90210-2328

Scottsdale Insurance Co
8877 North Gainey Center Dr
Scottsdale AZ 85258-2108

Staples
PO Box 689020
Des Moines, IA 50368-9020
Acct #6035517819161166

State Farm' Insurance
Clayton Insurance Agency
16167 East Whittier Boulevard
Whittier, CA 90603-2587

Stephen wise Temple
15500 Stephen Wise Dr
Los Angeles CA 90077-1598

TD Retail Card Services
c/o Creditors Bankruptcy Service
P O Box 740933
Dallas,Tx 75374-0933

The Gas Company
PO Box C
Monteray Park, CA 91756-0001

The Hartford
PO  Box 2907
Harford, CT 06104-2907

UCLA Foundation
405 Hilgard Avenue
Los Angeles, CA 90024

United States Trustee (LA)
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017-5524

Wells Fargo
PO Box 30086
Los Angeles,  CA 90030-0086

Wells Fargo Bank, N.A.
c/o Wells Fargo Card Services
Recovery Department
P.O. Box 9210
Des Moines, IA 50306-9210

Wells Fargo Financial Leasing
PO Box 6434
Carol  Stream, IL 60197-6434

Dennis A. Sullens
Ure Law Firm
800 Wilshire Blvd., Suite 1000
Los Angeles, CA 90017-2614

Leonard M. Ross
1009 N Beverly Drive
Beverly Hills, CA 90210-2328

Michael S Kogan
ERVIN, COHEN & JESSUP LLP
9401 Wilshire blvd., Ninth Floor
Beverly Hills, CA 90212-2928

Robert M Yaspan
Law Offices of Robert M Yaspan
21700 Oxnard St Ste 1750
Woodland Hills, CA 91367-7593

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Advanta Bank Corp.
PO Box 8088
Philadelphia, PA 19101-8088

INTERNAL REVENUE SERVICE
300 North Los Angeles Street
M/S 5022
Los Angeles, CA 90012

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF

(u)National Guardian Life Insurance Co.

(u)Pacific Mercantile Bank

End of Label Matrix
Mailable recipients    74
Bypassed recipients     3
Total                  77

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 21700 Oxnard Street, Suite 1750, Woodland Hills CA 91367

A true and correct copy of the foregoing document described **APPLICATION OF DEBTOR FOR ORDER AUTHORIZING EMPLOYMENT OF HILTON & HYLAND AS REAL ESTATE BROKER; DECLARATION OF LEONARD ROSS; DECLARATION OF JEFF HYLAND; AND DECLARATION OF TATYANA K. MENACHIAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 24, 2010** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Henkie F Barron    hbarron@winston.com, docketsf@winston.com
- Michael S Greger    mgreger@allenmatkins.com
- Michael S Kogan    mkogan@ecjlaw.com
- Dare Law    dare.law@usdoj.gov
- Justin E Rawlins    jrawlins@winston.com, docketla@winston.com
- David B Shemano    dshemano@pwkllp.com
- Ramesh Singh    claims@recoverycorp.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Thomas B Ure    tbuesq@aol.com, ThomasUre@aol.com
- Joshua D Wayser    joshua.wayser@kattenlaw.com, kim.johnson@kattenlaw.com
- Robert M Yaspan    court@yaspanlaw.com, tmenachian@yaspanlaw.com

**II.  SERVED VIA FIRST CLASS MAIL** (indicate method for each person or entity served):
On **November 24, 2010,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Chamber Copy
The Hon. Vincent Zurzolo
255 E. Temple Street, Suite 1360 Courtroom 1368
Los Angeles, CA 90012

Office of the United States Trustees
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

*Request for Special Notice*
Ascension Capital Group
2201 E. Lamar Blvd.
Arlington, TX 76006

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                                                         **F 9013-3.1.PROOF.SERVICE**

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ , I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 24, 2010 | Tatyana K. Menachian | |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010

**F 9013-3.1.PROOF.SERVICE**